The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Dollar and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in the Pre-Trial Agreement, filed on September 21, 1994, in the Opinion and Award filed on July 29, 1991, by Deputy Commissioner Nance, in the Opinion and Award filed on March 1, 1993, by Commissioner Ward, in the Opinion of the North Carolina Court of Appeals, filed on June 21, 1994 (No. 931 OIC 520), which are incorporated herein by reference and at the hearing as
STIPULATIONS
1. The parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act, and the employment relationship existed between the parties at the relevant times.
2. Transportation Insurance Company was the carrier on the risk.
3. The plaintiff was employed by R. G. Barry Corporation in June of 1989, at which time she suffered an aggravation of her asthmatic condition and exposure to chemicals in the workplace. At that time, plaintiff's average weekly wage was $250.00, which yields a compensation rate of $166.67.
4. The issues for determination are:
 a. Whether plaintiff has undergone a change of condition since the final payment of compensation.
 b. Whether plaintiff is entitled to continuing temporary total disability benefits as of March 1, 1993.
 c. Whether plaintiff is permanently and totally disabled as a result of the work-related condition.
 d. Whether plaintiff is entitled to permanent partial disability benefits.
5. At the hearing, the parties stipulated that an I.C. Form 28B, was filed by defendants on August 9, 1991, that plaintiff received final compensation under the Opinion and Award of Deputy Commissioner Nance, and that the request for hearing was timely filed by plaintiff.
6. The parties have stipulated further the following:
a. An I.C. Form 18, dated January 12, 1990;
b. An I.C. Form 33, dated June 29, 1994; and
c. An I.C. Form 33R, dated July 15, 1994.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. On February 27, 1991, the plaintiff was 47 years of age, and had been employed from 1969 until 1989 with defendant-employer. The plaintiff obtained her G.E.D. in 1984.
2. Plaintiff's only work experience consisted of employment with defendant R.G. Barry Corporation from August 1969, to June 1989. R.G. Barry Corporation was a manufacturer of bedroom slippers, but the plant has since closed. During the last eighteen (18) years of Mrs. Grantham's employment, she was a "sew vamp on sole" operator. Over the course of her employment with defendant, plaintiff became exposed, through inhalation, to high levels of glue and dust. As a result, she began to experience headaches, dizziness, sneezing, and breathing difficulty.
3. Prior to plaintiff's previous hearing before the Industrial Commission, she received treatment for these symptoms from Dr. William Yount. At that time, Dr. Yount's examination revealed that plaintiff suffered from allergic asthma, but he was of the opinion that her past medical history was not a contributing factor to the problems she was experiencing. It was also Dr. Yount's opinion that plaintiff's exposure to the substance Toluene, found in the laminating adhesive used to glue together the bedroom shoes, was the cause of her disabling condition.
4. Mrs. Grantham has continued under the care of Dr. Yount through the the date of the hearing before Deputy Commissioner Dollar. Dr. Yount's final diagnosis, stated in a deposition taken subsequent to the initial hearing before Deputy Commissioner Nance, was that plaintiff suffered from "allergic rhinitis, and asthma with occupationally induced allergic combination." As a result of this diagnosis, he advised plaintiff to discontinue work at Barry's or any similar type environment. In his opinion, her problems were work related, making her totally disabled from continuing any type of work at Barry's and employment with similar environments.
5. The opinion and award of Deputy Commissioner Nance, issued July 29, 1991, found as a matter of law that "plaintiff suffers from an occupational disease within the meaning of N.C. Gen. Stat. § 97-53 (13), inasmuch as her employment with defendant employer placed her at an increased risk of developing her illnesses and significantly aggravated her illnesses." Deputy Commissioner Nance found that as a result of the occupational disease, plaintiff was temporarily and totally disabled from May 4, 1989, to June 5, 1989, and plaintiff was awarded temporary total disability benefits at the rate of $166.67 per week for this period. Furthermore, defendants were ordered to pay all medical expenses incurred by plaintiff for treatment of her occupational disease, as well as costs and expert witness fees. These findings, and the Order, were never appealed by the defendants.
6. Deputy Commissioner Nance further found that plaintiff failed to prove she was disabled as a result of her occupational disease because she failed to show that she was incapable after June 13, 1989, of earning the same wages that she was earning in any other employment which would not expose her to respiratory irritants. Deputy Commissioner Nance based this finding on the fact that no evidence was presented showing that plaintiff cannot "sit, stand, bend, walk, lift or engage in any other activities that might be required in a job." The Full Commission affirmed the Deputy Commissioner's decision on March 1, 1993, and was subsequently upheld by the Court of Appeals, whose opinion was filed on June 24, 1994.
7. Since the date of Deputy Commissioner Nance's award, condition has deteriorated significantly to the point where she cannot work in any type of employment. Mrs. Grantham has remained under the care of Dr. William Yount. He has diagnosed her as having "asthma and occupational lung disease with compromised pulmonary function." Dr. Yount has placed her on nine (9) different medications, as well as allergy injections, to assist her breathing. Plaintiff's peak flow rates, a method of measuring maximal rate of exhalation, are now abnormally low ranging from a high of 350 down to 150, whereas a healthy person's peak flow is between 500 and 600. Mrs. Grantham's pulmonary condition impairs her exercise tolerance and makes her more susceptible to respiratory infections. Mrs. Grantham now has permanent impairment of diffusion, which has definitely worsened in the five years that Dr. Yount has treated her. Her shortness of breath makes it difficult for her to complete the normal activities of daily living. Dr. Yount noted that the trend in her condition continues "downward." In his opinion, based upon his latest pulmonary function test of Mrs. Grantham, plaintiff's ability to walk, stand, sit, bend, lift, or engage in any other physical activity is now severely impaired due to her occupational disease contracted during her employment with R.G. Barry Corporation, and the Full Commission so finds.
8. Yount testified that in his opinion, Mrs. Grantham is now permanently and totally disabled from any gainful employment as a result of her condition, and the Full Commission so finds. The defendants offered no adverse medical evidence.
9. During his deposition, Dr. Yount testified that although Mrs. Grantham is a former smoker, has asthma, and a congenital aortic valve, "those are probably minor factors in her impaired pulmonary function." Dr. Yount stated that the plaintiff's pulmonary symptoms appeared every day while she was working on the assembly line, and persisted each day at work. Since 1991, these problems have become increasingly worse, which substantiates his opinion that that her occupational disease is a "major factor" in her compromised pulmonary status.
12. There is no medical evidence other than Dr. Yount's testimony, and no evidence whatsoever that he is incorrect in his conclusion that the symptoms Mrs. Grantham began suffering while working have gradually worsened resulting in permanent lung damage.
13. At the hearing before Deputy Commissioner Dollar on 29 September 1994, plaintiff testified about the deterioration of her condition since her previous hearing on February 27, 1991. In particular, she stated that her dizziness, sneezing, sweating, shortness of breath, and nausea have all increased a great deal. She further testified that she is no longer able to do any cleaning, dusting, vacuuming, loading of the dishwasher, or laundry. Plaintiff suffers shortness of breath and heart palpitation episodes while sitting, and is unable to even walk around her house without having to stop and catch her breath.
14. Mr. Grantham testified that he has noticed a significant deterioration of his wife's condition since 1991. He stated that she is no longer able to cook, clean, do laundry, or drive, and that now he must perform those tasks for her.
15. Despite plaintiff's significant medical disability and discomfort, as related both by Dr. Yount and the plaintiff herself, she has put forth great effort in attempting to find employment. At the hearing on September 29, 1994, plaintiff introduced a compilation of plaintiff's handwritten entries regarding the dates on which she applied to various places of employment as well as the names of individuals with whom she spoke. The list contained approximately one hundred (100) entries of different places Mrs. Grantham contacted over the span of thirteen (13) months. No job offer resulted from these applications.
16. The deterioration of plaintiff's condition is caused by the occupational disease which she contracted while employed at Barry's. There is a clear correlation between her job and her present condition as stated by Dr. Yount. As a result of plaintiff's change of condition, the fact that she is likely never to recover, her age and experience, plaintiff will be unable to earn wages in any job for the remainder of her lifetime. Her change of condition to permanent and total disability because of her occupational disease occurred as early as 1 March 1993 as demonstrated in her medical records.
* * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Since the plaintiff received final payment of compensation on August 9, 1991, under the Opinion and Award of Deputy Commissioner Nance, filed on July 29, 1991, the plaintiff may only receive an award of additional compensation by showing that she has sustained a change of condition. N.C. GEN. STAT. § 97-47.
2. In determining if a change in condition has occurred, entitling an employee to additional compensation under N.C. Gen. Stat. § 97-47, the primary factor is a change in condition affecting the employee's physical capacity to earn wages. Lucasv. Bunn Mfg. Co, 90 N.C. App. 401 (1988). Plaintiff has met this burden through the testimony of Dr. Yount, her husband, and herself, and defendants have offered no evidence to the contrary.
3. Disability is defined in the Workers' Compensation Act as impairment of the injured employee's earning capacity rather than physical disablement, and workers who would not be unemployable but for work-related injury should be compensated by workers' compensation. Fletcher v. Dana Corp., 119 N.C. App. 491,459 S.E.2d 31 (1995).
4. In Bridges v. Linn-Corriher Corp., 90 N.C. App. 397,368 S.E.2d 388, cert. denied, 323 N.C. 171, 373 S.E.2d 104 (1988), the Court of Appeals noted that:
 [t]he Workers' Compensation Act was enacted to ameliorate the consequences of injuries and illnesses in the work place and one of those consequences, at least on occasion, is that a recuperated worker capable of holding a job cannot get one. A capable job seeker whom no employer needing workers will hire is not employable.
Id. at 399-400.
5. Plaintiff sustained a change in condition since the Commission last considered her case to the extent that her occupational disease resulting from her employment with R.G. Barry Corporation has resulted in permanent and total disability, which began on 1 March 1993, entitling her to compensation from Defendants in the amount of $166.67 per week beginning on 1 March 1993 and lasting for the remainder of her life or until she has sustained a further change of condition enabling her to be gainfully employed. She is also entitled to medical compensation flowing from such occupational disease.
* * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of Deputy Commissioner Dollar and enters the following:
AWARD
1. Defendants shall pay compensation to plaintiff for total and permanent disability at the rate of $166.67 per week beginning on 1 March 1993 per week for the remainder of her lifetime, barring change of condition, subject to the attorney's fee hereinafter approved. The amount that has accrued to date shall be paid in a lump sum and shall be subject to statutory interest as follows: The amount accrued from 1 March 1993 through 29 September 1994 shall bear interest from 29 September 1994 (the date of the hearing before Deputy Commissioner Dollar) until paid. Other amounts shall bear interest from the dates due until paid. All interest shall be paid to Plaintiff.
2. Defendants shall pay all medical expenses incurred by plaintiff as a result of her occupational disease.
3. An attorney's fee in the amount of 25% of the compensation awarded is approved for plaintiff's counsel. Counsel shall receive a lump sum for the lump sum awarded Defendant and shall receive every fourth check thereafter.
4. Defendants shall pay all costs.
 S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
DISSENTING:
(see dissent below)
S/ _________________________ DIANNE C. SELLERS COMMISSIONER